**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| National Lending Group, L.L.C., et. al., | ) ) ) | No.   CV 07-0024-PHX-PGR |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **<u>ORDER</u>** |
| Michael B. Mukasey, et al., | ) ) | |
| Defendants. | ) ) | |

Currently pending before the Court are Plaintiffs' Motions for Summary Judgement (Doc. 45), Defendants' Cross Motion for Summary Judgment (Doc. 48)[1] and the Motion to Strike filed by Plaintiffs (Doc. 59.). All motions are fully briefed and ready for disposition by this Court.

Prior to addressing the substantive issues raised in these motions and corresponding papers, the Court must briefly address the procedural issues that pervade Plaintiffs' papers. The Court recognizes that Plaintiffs have disregarded the Local and Federal Rules of Civil Procedure throughout the course of this lawsuit, often to the detriment of the Defendants. Plaintiffs' Motion for Summary Judgment fails to Comply with Fed. R. Civ. P. 56(e) and

---

[1] The Court previously ordered Plaintiffs to file the initial motion summary judgment and Defendants to file a cross motion for summary judgment. This is significant because the order is drafted accordingly.

1  LRCiv 56.1(a), because contrary to the letter of the Rules, Plaintiffs failed to file a separate
2  statement of material facts to support their motion. Furthermore, Plaintiffs' 27 page Motion
3  for Summary Judgment impermissibly exceeds the 17 pages limit set forth in LRCiv 7.2(e).
4  Such noncompliance with the Rules can create great difficulty for the Defendants in their
5  efforts to respond to material facts in a manner that complies with the Rules, as well as in
6  having the opportunity to adequately respond to allegations and arguments set forth in a
7  motion that is 10 pages in excess of the page limit, without themselves violating their own
8  respective page limits.   Furthermore, because there has been no separate statement of facts
9  filed by Plaintiffs, the Court must obtain its factual background from Defendants' separate
10 statement of facts, as well as the Administrative Record and Final Notice of Revocation and
11 Denial, which is based on evidence and testimony advanced at the administrative hearing at
12 issue.
13      Moreover, Plaintiffs' separate Motion to Strike violates LRCiv 7.2(m)(2) as it was
14 filed as its own motion, thereby compelling Defendants to use a portion of their summary
15 judgment Reply, which, pursuant to the Rules, is limited to eleven pages, to respond to the
16 Motion to Strike.  By impermissibly filing a free standing Motion to Strike, Plaintiffs
17 themselves were not restricted by the page limitations of the Rules and did not have to use
18 six pages of their summary judgment Response to address their issues contained in their
19 separate Motion to Strike.
20      While it is within the Court's discretion to strike Plaintiffs' procedurally deficient
21 documents, the Court  has decided to consider the motions on the merits. Nevertheless**, any**
22 **further violations by Plaintiffs before this Court will lead to their papers being stricken**
23 **and/or harsher sanctions without further notice.**
24 / / /
25 / / /
26
27

**MOTION TO STRIKE**

Plaintiffs' Motion to Strike (Doc. 59) seeks to "strike all exhibits referred to and or relied upon by Defendants" pursuant to Rule 56(e), Fed. R. Civ. P.  In the alternative, Plaintiffs seek to strike Exhibits 55, 83, 84, on the grounds that reports of statements made by four individuals proffered by the agency at the administrative hearing, without producing those individuals as witnesses, amounted to hearsay and were biased against Plaintiffs.

Regarding Defendants' Exhibits 55, 83, 84, and 85, Plaintiffs' contend that they each contain examples of "classic hearsay" and the "hearsay statements are not reliable or credible" (Doc. 59.).  Plaintiffs' second contention is that Defendants' Statement of Facts consists entirely of documents presented during the administrative hearing that would otherwise have been inadmissible at trial for lack of foundation, such as authentication and certification.  They therefore maintain that Defendants have failed to comply with Fed. R. Civ. P. 56(e), as there were no witnesses present at the hearing who were under oath and could thus lay the proper foundation for the admissibility of the exhibits.  Moreover, they argue that none of the Government's exhibits are self-authenticating.

Plaintiffs fail to recognize that the technical rules for the exclusion of evidence applicable in trials, and therefore generally applicable in the consideration of pretrial motions, do not apply to proceedings before federal administrative agencies absent a statutory requirement that such rules are to be observed. *Opp Cotton Mills, Inc. v. Admin, of Wage & Hour Div. Of Dept. Of Labor*, 312 U.S. 126, 155 (1941).  Neither the Gun Control Act of 1968, 18 U.S.C. §§ 921 et. seq.,  nor the regulations promulgated thereunder, require that the administrative hearing be a "hearing on the record" under 5 U.S.C. § 554. Consequently, the formal administrative hearing requirements of  5 U.S.C. § 556 do not apply to this case.[2]   The Administrative Procedures Act (APA), which generally applies in

---

[2] As accurately noted by Defendants, even under a 5 U.S.C. § 556 formal administrative hearing, the presentation and use of any oral or documentary evidence that is

- 3 -

administrative proceedings, requires that evidence be qualified as "reliable, probative, and substantial," 5 U.S.C. § 556(d), and not be "irrelevant, immaterial, or unduly repetitious." *Veg-Mix, Inc. v. U.S. Dep't. Of Agriculture*, 832 F.2d 601, 606 (D.C.Cir. 1987); *see also Steadman v. SEC*, 450 U.S. 91, 98-100 (1981); *Richardson v. Perales*, 402 U.S. 389, 407-08 (1971) (hearsay can be considered by administrative agency and constitute substantial evidence). Plaintiffs argue, that because the Federal Rules of Evidence typically apply to proceedings before this Court, they necessarily apply to the content of the administrative records considered by this Court when deciding a motion for summary judgment. The Court finds Plaintiffs' arguments to be misguided.

As the Defendants articulated in their analysis of *New Dynamics*, if the Court accepted Plaintiffs' argument, administrative agencies would be obligated to apply the Federal Rules of Evidence "derivatively" or risk the district court striking the materials the agencies relied upon in making their respective decisions. *New Dynamics Foundation v. U.S.*, 70 Fed. Cl. 782 (2006). Rather, according to 18 U.S.C. § 923(f)(3), subsequent to an administrative hearing and a decision by the Secretary not to reverse his decision to revoke or deny an application or revoke a license, the aggrieved party may file a petition with the United States district court for the district in which he resides or has his principal place of business for a judicial review of such denial or revocation. *Perri v. Dept. of Treasury, et. al.*, 637 F.2d 1332, 1335 (1981). During a judicial review, the district court may consider evidence submitted by the parties to the administrative proceeding. *Id*. In other words, Congress has afforded the district court the discretion to receive additional evidence to be considered with the administrative record when good reason to do so either appears in the administrative record or has been presented by the party petitioning for judicial review. *Id.* Otherwise, the

---

not "irrelevant, immaterial, or unduly repetitious" is authorized. *Bennett v. National Transp. Safety Bd.*, 66 F.3d 1130, 1137 (10th Cir. 1995). If in such hearings hearsay evidence is reliable and credible, it is admissible as long as it is relevant. *Id*.

court is entitled to decide the motion based upon the administrative record alone. *Id.*

Although it is evident from the language of Rule 56(e) which specific types of evidence are permissible for the court to consider as support for a motion for summary judgment, it is patently clear to this Court that an administrative record may in fact be considered in the determination of a motion for summary judgment of the type pending before this Court. If the Court decided otherwise, it would be contrary to the intent of Congress, as well as the logic behind holding administrative hearings. Moreover, several other courts have acknowledged the use of administrative records in the consideration of summary judgment motions. *Hart and Miller Islands Area Environmental Group, Inc. v. Corps of Engineers*, 505 F. Supp**.** 732, 760 n. 25 (D. Md. 1980) (citing to the Advisory Committee's reference to "evidentiary matter" to support a motion for summary judgment); *see In Suk Pak v. U.S. Dep't. of Agriculture*, 690 F. Supp. 322, 324 (M.D. Penn. 1987) ("In the context of reviewing an administrative decision, the court may consider a certified copy of the administrative record in determining whether summary judgment is appropriate," (citing *Langston v. Johnston*, 478 F.2d 915, 917 (D.C. Cir. 1973)).

Plaintiffs do not argue in their motion that the statements contained in the exhibits at issue are irrelevant, immaterial, or unduly repetitious. They do contend, however, that the statements are hearsay and unreliable. Having already disposed of the issue of hearsay, finding that the hearsay rules do not apply to the administrative record, the narrow issue for the Court to determine is whether the statements contained in the Exhibits are reliable.

Exhibits 83, 84, and 85 relate to the alleged straw purchases of weapons by convicted felon Kevin McAfee. When statements are made and the contents thereof are against the speaker's penal interests, i.e., the statements subject the speaker to criminal liability, then the statements themselves demonstrate their reliability. *U.S. v. Hoyos*, 573 F.2d 1111,1115 (9th Cir. 1978). In the case at bar, the Court finds that the statements of Kevin McAfee, Clorendia McAfee, and Mertresia Wiley made to law enforcement agents were sufficiently against their respective penal interests to demonstrate their reliability.

Likewise, Exhibit 55, containing evidence of the interview of Michael Satterfield by law enforcement pertaining to his admitted possession and use of cocaine while inside Pawn Plus is reliable. It is undisputed that State law enforcement officers were present for the interview wherein Satterfield openly admitted to violations of A.R.S. §§ 13-3407 and/or 3408. The Court finds that reasonable people in Satterfield's position would not have made those statements against his own penal interests unless believing them to be true. *Williamson v. U.S.*, 512 U.S. 594, 603-04 (1994).

Accordingly, the Court will deny the Motion to Strike because it finds that the foregoing Exhibits are reliable and the administrative record may be considered in determining the outcome of the pending motions for summary judgment.

## **MOTIONS FOR SUMMARY JUDGMENT**

The Court will contemporaneously address Plaintiffs' Motion for Summary Judgment (Doc. 45) and Defendants' Cross Motion for Summary Judgment (Doc. 48) below.

**I.    BACKGROUND[3]**

**A.    Hidden Ownership and Straw Persons/Purchasing**

One of the primary purposes for the enactment of the Gun Control Act of 1968 (GCA), 18 U.S.C. §§ 921 et. seq., was to keep prohibited persons, such as felons, from exercising control over firearms. *See* 18 U.S.C. § 922(g)(l). In creating the GCA, Congress has prohibited convicted felons from holding firearms licenses, as well as from possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of companies that have a firearms business (i.e. "responsible persons"). *See* 18 U.S.C. § 923(d)(l)(B).

According to the evidence produced by Defendants, Plaintiffs' firearms pawn businesses, doing business as "Pawns Plus," was controlled by a convicted felon by the name

---

[3] Plaintiff failed to provide the Court with a Separate Statement of Facts, therefore, the Court has gleaned the facts from Defendants' Statement of Facts, as well as the Evidence produced by Plaintiffs and Defendants at the administrative hearing.

- 6 -

of Mark H. Brooks ("Brooks"), among other responsible persons, and such information was never revealed to ATF on Plaintiffs' various applications for firearms licenses. (Doc. 10[4].)

Brooks has been involved in the firearms pawn business for approximately 16 years. He was first licensed by the ATF in February 1991 as a pawnbroker dealing in firearms. (Doc. 50.) On March 31, 1994, the ATF issued a license as a pawnbroker dealing in firearms to A.M.R. Enterprises, Inc. d/b/a "Pawns Plus". Brooks was the President/CEO, Secretary, Statutory Agent, and sole shareholder of A.M.R. (Doc. 50.)

On January 2, 1997, Brooks was indicted on 14 felony counts in the Superior Court of Maricopa County, Arizona. (Doc. 10.) After pleading guilty and being convicted of Fraudulent Schemes and Practices, Forgery, Theft, and Criminal Damages, Brooks was required, among other things, to surrender his Federal Firearms License ("FFL"). *Id.* Consequently, under 18 U.S.C. § 922(g)(1), since the time of his conviction, Brooks has been prohibited from shipping, transporting, receiving, and possessing any firearms or ammunition. Furthermore, under 18 U.S.C. § 923(d)(1)(B), A.R.S. §§ 13-3102(A)(4) and 13-3101(A)(6)(b), Brooks remains ineligible from receiving a FFL or from being a "responsible person" on someone else's FFL. Additionally, Brooks has been ineligible to receive a County pawn license for five years from the date of his felony convictions. (Doc. 10.)

In March and August of 2001, Mr. Baker, personal and professional counsel for Plaintiffs, made attempts in State court on behalf of Brooks to obtain restoration of Brooks' firearms rights. (Doc. 10.) In 2003, Brooks made another attempt to restore his right to posses or own firearms, recognizing that due to his prior felonies, he ran the risk of being sent to prison if he worked near or around firearms. *Id.* All of his petitions were denied. *Id.*

According to the administrative record and the deposition testimony of both Brooks and Steve Bagdonas, in an unrelated civil case litigated in the Maricopa County Superior

---

[4] Docket 10 is the Final Notice of Application or Revocation of Firearms License drafted based on the evidence produced at the administrative hearing.

Court, Bagdonas and Brooks testified that Brooks sold the assets of his firearms and pawn business to his longtime friend, Steve Bagdonas, and Bagdonas' corporation, Plaintiff Millennium Banc, Ltd. ("Millennium"). (Doc. 50.) Bagdonas is the sole officer and shareholder of Millennium. (Doc. 50.) One week after incorporating Millenium, and three days after Brooks' guilty plea, on October 22, 1998, Bagdonas submitted to ATF Millennium's application as a pawnbroker dealing in firearms, which was approved (Doc. 50.). The two men further testified that the sale of the assets was contemporaneous with Brooks' plea bargain because they knew that Brooks was going to lose his license as a result of his felony convictions. *Id.* Brooks retained a security note valued at over $1 million against the assets of Millennium, and received a salary of $7,500 per month by Millennium for his role as its "consultant"[5] (Doc. 50.). This was unknown to ATF, and this was not revealed to ATF when Bagdonas filed the aforementioned application. *Id*.

On August 23, 2004, National Lending Group, LLC ("NLG") was organized with Brooks as member/manager and Bagdonas as member (Doc. 50.). On or about October 12, 2004, NLG, "repossessed" the assets of Millennium (Doc. 50.). Due to Millennium's misuse of a firearms *renewal* application to *apply* for a license on behalf of NLG, ATF issued a license (in error) to NLG at Pawns Plus I (Doc. 50.). Consequently, NLG has operated and continues to operate firearms pawn businesses at Pawns Plus II and III without FFLs.

Plaintiffs certified under penalty of perjury that their applications for firearms licenses were complete with regard to the list of all responsible persons and identifying information (Doc. 50.). Brooks was never revealed as a responsible person on any of Plaintiffs' various applications for firearms licenses (Doc. 50.).

In addition to making management and policy decisions concerning the firearms business, according to various testimony, Brooks has had actual and constructive possession of the firearms at Pawns Plus (Doc. 50.). Moreover, according to the evidence produced at

---

[5] According to Defendants, Millennium also paid money toward Brooks' restitution and costs as a result of his felony conviction. (Doc. 50.)

- 8 -

the administrative hearing, Brooks has long maintained an office at Pawns Plus and works around hundreds of firearms. *Id.* He is also solely responsible for the security system, and according to the testimony of other employees, he has been seen handling firearms (Doc. 50.).

According to further evidence, Brooks and Co-Plaintiffs have permitted other prohibited persons to work at Pawns Plus. For example, they hired another convicted felon, David Wyma, to transact in firearms at Pawns Plus (Doc. 50.). Plaintiffs contend that Mr. Wyma had "specific authority from his State Probation Officer who conferred with his/her supervisor and stated that it would be permissible for Mr. Wyma to work at one of the locations." (Doc. 60.).

Furthermore, Brooks and other Plaintiffs permitted straw purchases of firearms to occur at Pawns Plus. Testimony establishes that Brooks advised Kevin McAfee, also a felon, how to make straw purchases of firearms at Pawns Plus through his wife Clorendia McAfee, and Mertresia Wiley (Doc. 50.). According to the record, McAfee entered Pawns Plus with the straw purchasers, chose the firearms, and the straw purchasers subsequently completed the required Firearms Transaction Records and ATF Forms 4473. The straw purchasers then left the store and McAfee received and carried away the firearms. When ATF investigated one of the McAfee straw purchases, testimony establishes that Brooks outwardly warned McAfee about the investigation. He additionally told him that Plaintiffs had advised ATF agents that there was no video surveillance from that particular firearms purchase (Doc. 50.).

**B.     Statutory and Regulatory Record-keeping**

The GCA and its implementing regulations contain numerous record-keeping requirements for firearms dealers such as Plaintiffs. 18 U.S.C. § 923(g)[6]. Firearms dealers must ensure that a Firearms Transaction Record, ATF Form 4473, is properly completed to

---

[6] The GCA's implementing regulations are found at 27 C.F.R. pt. 478 (formerly Pt. 178)

- 9 -

record identifying information regarding gun purchasers to prohibit gun transfers to persons prohibited from possessing firearms, and to facilitate tracing guns that are involved in crimes. *Id.* A prospective transferee of a firearm must complete Section A of the form to disclose various identifying information[7] and to answer questions that provide the dealer with sufficient information for the dealer to determine whether it can legally transfer the firearm to the prospective transferee.[8] *See generally*, 18 U.S.C. § 923(g)(1)(A); 18 U.S.C. § 922(m); 27 C.F.R. § 478.124. The dealer must then complete Section B, C and D to provide further details about the firearm(s) being transferred, the dealer's National Instant Criminal Background Check System ("NICS")[9] check on the transferee, and the transferee's identifying documentation. *Id.*

The next requirement is that each licensed firearm dealer must maintain a bound book identifying each firearm placed into and taken out of its inventory. This book is referred to as the "Acquisition and Disposition Bound Book," or "A&D book." 18 U.S.C. § 923(g). Acquisition entries in the A&D book must identify the gun by manufacturer, model, serial number, type, and caliber or gauge, identify the date the licensee receives the gun, and identify the person (by name and address or FFL Number) who transferred the gun to the dealer. *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 674 n. 3

---

[7] The transferee must identify his or her full name, residence address, place of birth, height, weight, sex, race, birth date, county and state of residence, country of citizenship, and if applicable, the INS-issued alien number or admission number. (*See* 27 C.F.R. 478.124(c)(1)).

[8] The transferee answers these questions in Section A, Certification of Transferee. (*See* 27 C.F.R. § 478.124(c)(1)). Under the GCA, it is unlawful for dealers to transfer guns to persons who they know or have reasonable cause to believe fall within various categories, such as those under indictment for or convicted of a crime punishable by imprisonment for more than one year, illegal aliens, and those convicted of a misdemeanor crime of domestic violence. *See* 18 U.S.C. § 922(d)(1)-(9); 27 C.F.R. § 478.99(c); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 674 n. 2 (N.D. Ill. 2004).

[9] *See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.11 (definitions); 27 C.F.R. § 478.102.

(N.D. Ill. 2004). The licensee must record these entries by the close of the business day following the acquisition, except as provided under 27 C.F.R. § 478.125(e) and (g). Disposition entries must include the date the gun was transferred out of the licensee's inventory, the identity of the person to whom the gun was transferred, and the address of that person or the Form 4473 serial number associated with the transfer. The licensee must record these entries no later than seven days after the disposition. *See generally*, 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e) & (g).

Plaintiff NLG uses a computer record-keeping system. Contrary to Plaintiffs' assertion otherwise, there is no evidence that Plaintiffs had a "variance" from ATF that would allow it to forego the A&D book requirement (Doc. 50.). See 27 C.F.R. § 478.125(h). NLG was unable to print its records on demand during the inspection. Rather, for all of the stores, Pawns Plus provided ATF with computer disks of its records. However, the computer system is not in the plain and unambiguous format required by 27 C.F.R. § 478.125(e), and does not contain complete acquisition and disposition information. Notably, the records did not contain the transferor/transferee's names and addresses. Another example of Plaintiffs' record keeping violations is the 4,335 bound book produced by Plaintiffs at the hearing for Pawns Plus I as Licensee Exhibit 12 (Doc. 10, Exhibit 1, p. 35-36.). Among other things, it contained numerous double entries of firearms, multiple entries of the same firearm, with one or more closed dispositions, occurring on the same day, and multiple addresses for the same person on the same day. *Id.*

In addition to the information that was improperly recorded in the A&D record, Plaintiffs wholly failed to record the acquisition of twenty-three (23) firearms disposed of at Pawns Plus I. Moreover, NLG failed to record the acquisition of thirty-eight (38) firearms found in its physical inventory at Pawns Plus I. Additionally, there were at least twenty-four (24) firearms in inventory at Pawns Plus I for which the serial numbers were not recorded properly (Doc. 50.). All of this demonstrates that firearms are being received and transferred at Pawns Plus without record-keeping, thus prohibiting ATF from being able to trace

firearms or verify that firearms are not being transferred without the corresponding ATF Forms 4473 and associated criminal background checks.

Finally, it was determined that Pawns Plus was unable to account for at least 92 firearms. Doc. 10, Exhibit 1, p. 35. Furthermore, NLG has been operating without its own firearms licenses at two of its stores. NLG admitted in its mandamus action to get ATF to issue it a firearms license at Pawns Plus V that Millennium's assets were involuntarily transferred to it in 2004 (Doc. 50.). Thus, NLG operated without a license at Pawns Plus V until a cease and desist letter was issued on August 23, 2005, and continues to operate without its own license at Pawns Plus II and III (Doc. 50.)**.**

## II.    LEGAL STANDARD AND ANALYSIS

In determining a motion for summary judgment based on 18 U.S.C. § 923(f)(3), the standard differs from the general standard of review under Rule 56, Federal Rules of Civil Procedure.   Section 923(f)(3) of Title 18 provides that the Attorney General's decision to revoke or deny renewal of a FFL is subject to *de novo* review in the United States district court. 18 U.S.C. § 923(f)(3). It is the district court's discretion whether to consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the original hearing before the agency, *id.*, and there is no requirement that the court conduct an additional factual hearing. *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466-67 (1980)("Although the legislative history of § 923(f)(3) speaks of '*de novo* review,' we do not understand that history to require the district court to hold a hearing and receive evidence beyond that contained in the administrative record in every case.  The language of the statute itself is permissive...")*; Benjamin v. Bureau of Alcohol, Tobacco, and Firearms*, 771 F.Supp. 307, 309-310 (D. Oregon 1991). The Court finds that it has sufficient information before it to make a determination without an evidentiary hearing or additional evidentiary material.

In their Motion for Summary Judgment, Plaintiffs commenced by using several pages to set forth the definition of "Attorney General" under the Homeland Security Act of 2002 and setting forth certain powers of the Attorney General as they pertain to the Director of the

Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter ATF). Subsequently, Plaintiffs then contend that the Director of the ATF does not have the authority to revoke or deny an existing FFL. Plaintiffs assert, "[n]owhere in the documents received by the Licensee, including the Final Notice of Application or Revocation of Firearms License does it state that it was reviewed or signed off on by the Attorney General of the United States or his delegate. The Notices of Revocation issued to Licensee should be considered null and void." Contrary to the Plaintiffs' assertion, it is well established that the Attorney General has the authority to delegate certain powers to agencies under his authority, such as the ATF. *U. S. v. Bean*, 573 U.S. 71 (2002); 18 U.S.C. § 925(c). The Attorney General has delegated the power to exercise the functions and powers of the Attorney General under 18 U.S.C. § 925(c) to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, including the acting directors thereof. *Id*. Consequently, Plaintiffs' legal argument for summary judgment on this ground wholly fails.

Next, Plaintiffs spent several pages restating verbatim the transcript of the administrative hearing before Officer Fyfe. Without providing any reason for doing so, Plaintiffs called into question Officer Fyfe's experience and training in conducting administrative hearings. They argued that the government had the burden of proof and reiterated their arguments pertaining to hearsay from government witnesses.[10] The Court will not address any conclusory statements that have no support in the record. Furthermore, as to their hearsay contention, as previously established, a hearing under 18 U.S.C. § 923(f)(2) is not a formal, adversarial hearing to which the standards of the Administrative Procedures Act apply. *Arwady Hand Truck Sales Inc., v. M. Vander Werf*, 507 F. Supp. 2d 754, 759-60 (S.D. Tex. 2007). Therefore, relevant hearsay evidence is admissible in such a proceeding. *Richardson v. Perales*, 402 U.S. 389, 402 (1971). In the administrative

---

[10] These arguments duplicated the arguments set forth in the separate Motion to Strike, which Plaintiffs are technically prohibited from filing under the Local Rules, yet nonetheless chose to file.

hearing at issue, Plaintiffs made the choice to disparage the government's evidence rather than to introduce their own testimonial evidence on their own behalf. This was their own choice, and now the case will proceed based upon the parties' respective decisions.

Plaintiffs then proceed by setting forth in their moving papers the general Rule 56 standard of review for summary judgment and nevertheless asserting that, according to *Stein's, Inc. v. Blumenthal*, the Director's administrative decision is "not clothed with any presumption of correctness or other advantage." (Doc. 45). *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466-67 (1980). However, as is true with any partial quotation[11], misunderstanding can result. In fact, what the *Stein's* court actually said was:

> Because even if the district court chooses not to receive additional evidence, its review is de novo, the decision of the Secretary is not necessarily "clothed . . . with any presumption of correctness or other advantage." *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D.Cal.1970). The ultimate decision as to the law and the facts *remains with the trial judge*. However, the district court, consistent with its obligation to review the matter *de novo*, may accord the Secretary's findings such weight *as it believes they deserve* in light of the evidence in the administrative record and the evidence, if any, the district court receives to supplement that record. In this sense, the Secretary's decision may be upheld when the trial court concludes *in its own judgment* that the evidence supporting the decision is "substantial." *Stein's*, 649 F.2d at 466-67 (emphasis added).

### A. Record-Keeping Violations

Plaintiffs next argument[12] concerns the willfulness standard required for ATF to revoke or deny a FFL. Plaintiffs contend that Defendants cannot establish that any of Plaintiffs' violations were willful.[13] For example, Plaintiffs concede that they violated the

---

[11] In a separate section of its motion, Plaintiffs quoted this section of the *Stein's* decision, thus the Court is not inferring that Plaintiffs intended to mislead the Court.

[12] Plaintiffs once again briefly returned to their hearsay arguments.

[13] With regard to Plaintiffs' assertion that prior warnings are necessary to establish willfulness, the authority cited does not support Plaintiffs' supposition. *Manuele v. Acting Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 2008 WL2168734 (C.D. Ill. 2008); *Francis v. U.S. Bureau of Alcohol, Tobacco and Firearms,* 2006 WL 1047026 (E.D. Okla. 2006).

- 14 -

GCA record-keeping requirements, but they nevertheless claim that the violations were not willful and therefore, they should not be penalized, as a matter of law. Defendants, in their Motion for Summary Judgment, argue that Plaintiffs' violations of the GCA were willful, and therefore, the Defendants were correct in denying and revoking Plaintiffs' applications for FFLs.

For purposes of the firearm licensing laws and regulations, a violation is willful if the license holder understands the requirements of the law but knowingly fails to follow those requirements or is indifferent to them. *Stein's*, 649 F.2d at 466; *see Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir.2006) (standard for willfulness is purposeful disregard of, or plain indifference to, a known legal obligation). Bad motives do not need to be established. *Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, U.S. Dep't. Of Treasury*, 448 F.Supp. 409, 415 (M.D.Pa., 1977).

Defendants contend that Plaintiffs have failed to properly maintain records in compliance with Federal gun control laws and regulations. (Doc. 50.) They further contend that in doing so, Plaintiffs were knowingly indifferent to the GCA in clear contravention of the intent of Congress in enacting the GCA. The Court agrees.

Notably, there are two separate GCA record-keeping requirements, the first requiring firearms dealers to complete a Firearms Transactions Record, ATF Form 4473, to record identifying information about firearm purchasers to ensure that firearms are not transferred to prohibited persons and to facilitate the tracing of firearms that are involved in crimes. The second requirement involves the Acquisition and Disposition ("A&D") bound book. The A&D book contains the records of all firearm acquisitions and transfers and is required to be maintained pursuant to 18 U.S.C. § 923(g)(l)(A) and 27 C.F.R. § 478.125(e). This record-keeping requirement is necessary to allow ATF to trace firearms from the manufacturer to the wholesaler through the dealer's records to persons who have committed crimes with firearms.

In case at bar, instead of recording the acquisitions and dispositions in the A&D book as required by law, Plaintiff NLG decided to use a computer record-keeping system.[14] Moreover, the computer system has proven to be deficient and not in the plain and unambiguous format required by 27 C.F.R. § 478.125(e). It does not contain complete acquisition and disposition records, and it does not contain the transferor/transferees' names and addresses, all required by the regulations. Furthermore, the bound book that was eventually produced by Plaintiffs contained double entries of firearms, multiple entries of the same firearm, with one or more closed disposition, occurring on the same day, and multiple addresses for the same person on the same day. Moreover, the evidence establishes that Plaintiffs wholly failed to record its acquisition of twenty-three (23) firearms it had disposed of at Pawns Plus I. Moreover, NLG failed to record as an acquisition thirty-eight (38) firearms found in its physical inventory at Pawns Plus I. Additionally, there were at least twenty-four (24) firearms in inventory at Pawns Plus I for which the serial numbers were not properly recorded. (Doc. 50.) It was also determined that Pawns Plus was unable to account for at least ninety-two (92) firearms. (Doc. 10)

As pawnbrokers dealing in firearms, Plaintiffs knew they were required by law to keep a record of all acquisitions and dispositions, they nevertheless did not do so. The firearms statutes and regulations requiring Plaintiffs to maintain and retain firearms records "are sufficiently clear so that 'ordinary people' would understand what conduct was expected of them..." *U.S. v Ninety-Five Firearms*, 28 F.3d 940, 942 (9th Cir. 1994). Additionally, ATF introduced at the administrative hearing the checklists for Pawns Plus (I-III), signed by Steve Bagdonas, used to review the laws and regulations pertaining to the firearms businesses. (Doc. 50.) *See Matter of Revocation of Federal Firearms License Held By Sullivan*, 431 F. Supp.2d 574 (E.D. N.C. 2006)(relying on signed acknowledgment of ATF rules and procedures). Further, Plaintiffs were present at the hearing, were given the opportunity to

---

[14] According to the record, NLG does not have a "variance" from the ATF for such noncompliance. (Doc. 50.)

raise arguments, yet never asserted a lack of knowledge as to the record-keeping and other requirements of the gun control statutes and regulations. (Doc. 50.)

Consequently, because it is clear that Plaintiffs knew the requirements, the number of failures demonstrates that they either decided not to follow the regulatory requirements, or they were indifferent to the requirements. Thus, the evidence establishes willful violations by Plaintiffs. *Stein's*, 649 F.2d at 466; *see Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir.2006) (standard for willfulness is purposeful disregard of, or plain indifference to, a known legal obligation).[15]

### B. Involvement of Prohibited Persons

As accurately noted by Defendants in their motion, shortly after being incorporated, and only days after Brooks' guilty plea, Bagdonas submitted to ATF Millennium's application as a pawnbroker dealing in firearms. The business association between Bagdonas and Brooks as it pertains to Pawns Plus was unknown to ATF (as it was not revealed), and the application was therefore approved. (Doc. 50.) The two men testified that the sale of the assets was contemporaneous with Brooks' plea bargain because they knew that Brooks was going to lose his license as a result of his felony convictions. *Id.* Consequently, Brooks retained an over $1 million security note against the assets of Millennium, and received a substantial salary of $7,500 per month by Millennium for his role as its "consultant." (Doc. 50.) This illustrates the "straw" ownership or control of Pawns Plus by Brooks. A straw ownership occurs when a person obtains a license for a firearms business on behalf of a person who is ineligible to obtain a license. Permitting straw ownerships would contravene the GCA and render all licensing requirements futile.

Despite Brooks' apparent straw ownership of the firearms pawn shops, at no point in

---

[15] Furthermore, it has been recognized that "a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license." *Appalachian Resources Development Corp. V. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004)(internal citations omitted). Here, Defendants have established far more than a single violation.

- 17 -

time was Brooks revealed as a responsible person on any of Plaintiffs' various applications for firearms licenses. (Doc. 50.)   In their Response to Defendants' Cross Motion for Summary Judgment, Plaintiffs deny such facts "to the extent it implies that Mr. Brooks, the previous owner of the business was anything other than 'on call seven days a week for six months, on site for computer work when needed.'" (Doc. 60.)   However, Plaintiffs fail to cite any authority that permits Brooks to act as "consultant" in the manner he has evidently been acting for the firearms pawn shop, as he is prohibited from doing so under the GCA. *See* 18 U.S.C. §§ 922(g)(1), 923(d)(1)(B).

Plaintiffs then contend that the "issue (of hidden ownership) was put to rest during the administrative hearing by the testimony of Mr. Clint W. Bonney, Area Supervisor for the Phoenix III Industry Operations Group." (Doc. 60.). Plaintiffs cite to his testimony, however they do so inaccurately.  Mr. Bonney did not in fact put the issue to rest in Plaintiffs' favor. Instead, Mr. Bonney explained that he believed that Mr. Brooks' "overall financial management *would* give him some control." (Emphasis added).  Furthermore, when asked if it was fair to say, based on the collective information of ATF, that Brooks does not qualify as a responsible party under "little a or little b in Exhibit 36", Mr. Bonney responded in the negative (Doc. 60.).

Brooks' financial control, his control of security, his "consultation", the evidence regarding his handling the firearms and having an office onsite, and the plethora of other evidence supports Officer Fyfe's decision.  Furthermore, ATF could not, as a matter of law, have granted Plaintiffs' firearms licenses had the true identity of responsible persons, including Brooks, been disclosed on Plaintiffs' applications. *United States v. Fleischli*, 305 F.3d 643, 652 (7th Cir. 2000); *Cf:Casanova Guns, Inc. v. Connally*, 454 F.2d 1320, 1322 (7th Cir. 1972) (upholding ATF's denial of firearms license to the successor corporation of a corporation convicted of a felony in light of the significant unity of interests between the two corporations).  The Court finds that Plaintiffs' knowing failure to reveal the involvement of

- 18 -

Brooks, a prohibited person, on the application of FFLs for the pawn shops, amounts to willful violations of the GCA laws and regulations. *Id*.

Further evidence was offered at the administrative hearing which demonstrates that Plaintiffs condoned straw purchases of firearms at their pawn shops. For example, Defendants introduced evidence that Brooks advised Kevin McAfee, another prohibited person under the GCA, how to conduct straw purchases firearms at Pawns Plus. McAfee not only made the purchases, but according to Defendants' evidence, Plaintiffs assisted in covering up the straw purchase by informing investigators that there was no surveillance for those particular firearms dispositions. (Doc. 50.) Plaintiffs argue that they were not able to cross examine McAfee and thus such evidence is not reliable or credible. However, McAfee was an employee of Plaintiffs and as such the Court finds Plaintiffs' argument tenuous at best. Assuming Plaintiffs did not know the identity of the employees whose testimony would be used during the administrative hearing, they had better access to their employees than anyone else, and thus had the opportunity to question them at their convenience. Consequently, the Court finds that Officer Fyfe was correct in finding that Plaintiffs' conduct associated with McAfee's straw purchases clearly amounts to willful violations of the GCA by Plaintiffs.

Finally, as to Mr. Wyma's employment at Pawns Plus, Plaintiffs' argue that despite his felony conviction, Mr. Wyma was authorized by an Arizona State Probation Officer to work at Pawns Plus (Doc. 60.). However, Plaintiffs offer no authority for the proposition that "permission" by a State officer supercedes the requirements of federal law. *See United States v. Brebner*, 951 F.2d 1017 (9th Cir. 1991) (misstatements by state and local officials that the dismissal of a felon's prior convictions made it legal for him to possess firearms were of no consequence since "these officials lacked the authority to bind the federal government to an erroneous interpretation of federal law" in Federal 922(g)(1) prosecution). There is no

controverting evidence to establish that Mr. Wyma, a convicted felon, was not a prohibited person under the GCA.

It is clear to the Court that Officer Fyfe had sufficient evidence before her to find that Plaintiffs violated the laws and regulations of the GCA. It is therefore evident that the Acting Director of ATF was correct in his decision to revoke Plaintiffs' existing FFLs and deny the remaining applications by Plaintiffs for FFLs.

Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 45) is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED** in their favor and against Plaintiffs.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (Doc. 59) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment for Defendants accordingly.

DATED this 18th day of December, 2008.

Paul G. Rosenblatt
United States District Judge